Thank you, Your Honors. My name is David Ness. I'm with the Federal Defenders of Montana, and I represent the petitioner and appellant in this case, Mr. Keith Doyle. The certified issue in this case is whether Mr. Doyle's right to a speedy trial was violated by the 609 days of delay between his arrest and trial. The Montana Supreme Court resolved this issue with a methodology that it later overruled and described as inconsistent with and contrary to the balancing approach that has been articulated by the Supreme Court in Barker v. Wingo. The District Court, following the Montana Supreme Court's lead, reviewed its decision under a de novo standard. It applied Barker and, using its own de novo standard, determined that there was no speedy trial violation in this case. In our view, the District Court's analysis suffers from two primary flaws. The first is that it erred in dividing the delay attributable to the crime lab into two discrete periods. It determined from the outset that the crime lab should have had 224 days at the least. That was the time period from when Mr. Doyle first appeared for arraignment and his first trial date, and that that would be a reasonable time for it to conduct its analysis. Of course, the crime lab had not really even started to conduct its analysis by that time. More than a month later, Mr. Doyle's lawyer filed a motion, and he testified later on during the motion to dismiss hearing that almost a month after the first trial date, in the middle of January, that the state crime lab hadn't even started looking at the bulk of the evidence that had been provided to it. The District Court also erred in that same respect, I think, in assigning reasons for the majority of the period of delay, and the majority of the period of delay here, and indeed the reason from which all the other delay flows, that of the crime lab, and assigning responsibility for that to Mr. Doyle. In the Brilliant case, which I think is sort of the mirror image of this case, that's the U.S. Supreme Court case involving delay caused by the defendant's lawyers to move the case along, the Vermont Supreme Court had determined that part of that delay should be attributed to the state, and the U.S. Supreme Court held that defense counsel cannot be considered to be a state actor. And in this case, where I think that the Congress proposition should be true, Mr. Doyle had no control over the state crime lab, was unable to get it to move the case along, so to speak, and so the District Court, in determining that he should be responsible for 224 days of that error at the least, and really more than that, made an error that I think runs contrary to the Brilliant decision. Is that a factual error or a legal error? I think that's a legal error. I think there can be, the factual finding would be what was going on, what caused the error, so to speak. So the factual finding would be, was the evidence at the state crime lab, and was that the reason for the delay here? Then the legal issue would be, who should that be assigned to? And so the court, I believe, made a legal error when it determined that the delay caused by the crime lab's inability to examine this evidence in a timely manner should be attributed to Mr. Doyle, which in effect is what he did. I thought I read Judge Osby to be saying that there were portions of the analysis of the evidence where the delay was clearly attributable to the state because the lab was overwhelmed by the amount of physical evidence that they had to analyze in this case, but that once that was completed and the delay was attributed to the state, there was delay that should fairly be attributed to the defense in conducting its own forensic evaluation, engaging a DNA expert, going out and conducting additional witness interviews suggested by the evidence. Isn't that what Judge Osby said in her order? Well, what Judge Osby said in her order, Judge Tallman, was that there was that first period of time, which was from May 5th to December 15th, and that's 224 days. And she tagged the state with that, right? No, she did not. She said that that period of time should be attributed to both jointly. And then there was the December 15th to the June 7th day. That was 175 days that she did tag the state with. Then there was the third delay, which was June 7th to September 20th, and she tagged Mr. Doyle with that as well as the final two delays, the fourth one. But was the first 224 solely with regard to analysis of the crime scene evidence, or did it also include the fact that both sides were scrambling to try and investigate their case and get ready for trial? As I read her order, she credited defense counsel's testimony that he would have been ready to go to trial in December if he had the crime lab stuff. His motions did cite other reasons for the continuance. So it's not just the evidence? The way I read her order is that at least with respect to those first two periods of delay, she considered the reasons for the delay to be the crime lab. But then what she did, I think kind of oddly, was divided that time up and gave that first period of delay, attributed that first period of delay to both of them. I can't lay my hand on this specific paper. I thought there was a discussion there about the fact that because of the complexity of the crime, that neither side could be ready for trial within the initial trial-setting period and that both sides needed additional time. I thought that was her rationale for splitting up, if you will, the delay in attributing some to the state and some to the defendant. She did, and then she went on. I have read the order a number of times. I should have it almost memorized. But as I recall what her findings and recommendations says, then she went on to discuss the mountains of evidence that were given to the crime lab and that, therefore, given all of the complexities of the case, that it should be attributed to both. Four thousand pages of discovery, right? That's pretty unusual for what is a fairly, I mean, it's a pretty simple murder in that respect, but apparently more complicated than it would appear. But she did, I think, credit defense counsel's testimony that, hey, I would have been ready to go to trial on December 15th had I gotten the stuff from the crime lab. In that same vein, I have a problem to some degree when you're talking about forensic evidence. I can understand the case where somebody says, well, you didn't go to trial because we're short of judges. And you say, well, that's your problem. Stop trying civil cases, bring in another judge, and so forth. But because the nature of forensic evidence is such that it's sometimes more important to the defendant than it is even to the prosecution, it seems to me you get into a situation where a judge's decision that delays should be attributable to both is more defensible than, for example, the court congestion example that I gave you. You know, in the Brilliant case, the Supreme Court seemed to indicate that what you look at is you look at the reason for the delay, and then you put that into the weighing factors. And you don't necessarily say, well, this delay should be attributable to both or to the defense or something like that. If the defense requests a delay, then that's probably going to overweigh other things. Well, I guess one of the points I was making, just to perhaps conjure up an absurd hypothetical, but if a given test actually could only took six months to do, and that's as short as you could do it, the defense counsel could still say, well, if I would have had the results of that test at the end of three months, I would have been ready to go to trial. It really doesn't resolve the issue by him making those kinds of statements. No, but I think in your hypothetical, the length of the delay would weigh against him in the balancing process. Here, we have 609 days over a year and a half. So I think that that was the problem here. Well, 609 days, but they were parsed into segments, as you would have to do. It wasn't 609 days, even by your view, all attributable to the government. No, but I think that the vast majority of it should be. Well, part of it was a change of defense counsel, right? We had a substitution of counsel pretrial. Defense counsel was disqualified just shortly before that September trial setting. Right. And that, I think, was 84 days. Which she attributed, I think, appropriately to the defense. She attributed that to the defense. But then you still have the 224 days plus 175 plus 105 days. I think I'll reserve. Thank you. May it please the Court, my name is Mardell Pleyhar. I am the counsel for the Attorney General of the State of Montana and for the Warden Sam Law. The district court's decision denying Doyle's petition for writ of habeas corpus should be affirmed for two reasons. First, Doyle has not demonstrated that the state court's decision denying his speedy trial claim is contrary to or an unreasonable application of clearly established federal law. Let me ask you a question right there, because do you think your case is harder under a DEPA or harder under a straight Sixth Amendment analysis without a DEPA? I believe that under, I don't think either is harder or easier, but I think under either standard the State of Montana prevails. I understand that the, why the district court probably reviewed the case under de novo review, which she said she was doing in an abundance of cautions. She certainly did not make any findings that we should get past the DEPA deference, and she seems to have believed that it would be easier to review the case de novo. But we, the State of Montana is still entitled to the deference afforded by DEPA. Our second reason that the state should prevail is that even under de novo review, the state has demonstrated that Doyle's right to a speedy trial was not violated. Given the facts of this case, the 20-month delay between Doyle's arrest and the start of his trial was not unreasonable. This was a complex homicide case involving multiple defendants, a large number of witnesses, and the largest amount of DNA evidence that one crime lab technician had ever seen. Further, the state, the federal magistrate found that the State of Montana was not responsible for negligent delay or deliberate delay, and in fact found that the state made a diligent, good-faith effort to bring Doyle to trial. These facts demonstrate that Doyle's right to a speedy trial was not violated. I'd like to address the reasons for the delay that were brought up in my opponent's argument. As you noted, the federal district court or magistrate court held that the first trial setting, the length of delay there was 224 days, and she said that the parties shared responsibility for that. And that is reasonable. The record demonstrates that neither party could have been prepared to go to trial before that. And Doyle has requested all four of the continuances in this case. Each of these continuances was necessary for his defense. Therefore, it is really Doyle that is responsible for the majority of this delay. Well, if the defense counsel says, I have to request a delay because I haven't got the discovery I asked for, are you going to tag him with that delay? No, Your Honor. In the speedy trial hearing, Doyle's first counsel who testified actually stated that the state, other than the crime lab evidence, which was not processed yet, but other than that, that the state was extremely compliant in giving him all of the discovery as quickly as possible. So there's no indication that the state delayed in giving him any discovery. The only issue here was the crime lab delay. That's the whole thing. Yes. Because of that, it is reasonable for that first delay to be attributed to both parties and for them to share responsibility for that. And the federal magistrate actually said that the state was completely responsible for that delay. But in the request for that first continuance, Doyle's counsel listed five reasons that they needed a continuance. Only one of those reasons was lack of evidence from the crime lab. The first reason was just generally due to the amount of evidence in the case and the number of witnesses they could not be prepared to go to trial at the first trial setting. They also were still attempting to sever Doyle's case from Maestas' case, his co-defendant. And they also were attempting to get their own expert appointed, which they were still working on and had not yet done, their own expert for the DNA evidence. And finally, Doyle's counsel stated that he had three other homicide cases in the month before Doyle's case. So the record demonstrates that Doyle's counsel could not have been ready to go to trial any more than the state could have without the crime lab evidence. Therefore, that period of time is reasonable to share responsibility. And all of the other delays were requested by Doyle. The state was prepared to go to trial after that. The final evidence from the crime lab, the final results were produced in April of 2004. The next trial date was set for June 7th of 2004. And Doyle requested a delay of that trial date for three reasons, one of which was that he wanted to have his own experts review the crime lab evidence. But he also was waiting to hear back from a pathologist that they had consulted regarding the autopsy results. And they were still attempting to locate witnesses at that point and interview some of them. So the record demonstrates there that Doyle's counsel was not ready to go to trial at that point. The state filed a response to that motion for a continuance. And in the state's response, they acquiesced to a brief continuance, but indicated that they were concerned that Doyle had declined to waive his right to a speedy trial for this continuance. And they asked the court to schedule the trial as soon as possible. So that further demonstrates the state was attempting to bring this case to trial at this point. The third trial setting, or the third continuance, was requested by Doyle. And the federal magistrate correctly attributed that time to Doyle. That continuance became necessary when a conflict of interest developed for his counsel. And that occurred when the state interviewed Doyle's girlfriend in preparation for the third trial setting. And at that time, she initially had given statements that did not incriminate Doyle. But at this later time, she informed officers that he had told her that he had held his hand over Solick's mouth, causing Solick to suffocate to death. And she also stated that her sister had evidence that was incriminatory against Doyle. At that point, Bowen, the girlfriend, and her sister became witnesses for the state. And there was a conflict of interest because one of Doyle's counsel had previously represented, I believe, the sister. And therefore, that period of delay should be attributed to Doyle. The fourth trial setting was continued for just a brief period of time because he did not want the jury to be deliberating before Christmas. He requested that continuance. The court granted a brief continuance based on his request. And that period of delay should be attributed to him. And the bottom line of the line of argument you're making right now is that if you sort of make a calendar resolution of this matter, you don't look at anything further. Correct, Your Honor. Under the – well, the main issue that has been raised by my opponent is the reason for the delay. And when you look at the reason for the delay in this case, the record shows that Doyle requested each of the delays. Yes, the state may be partially responsible due to the lack of crime lab evidence. But the record shows that Doyle's counsel could not be ready to go to trial sooner because of many factors. This was a complex case with a lot of witnesses and multiple defendants. And as the federal magistrate found, the state made a diligent, good-faith effort to go to trial. The line of argument you're pursuing also eliminates the necessity of your having to deal with Montana's court trashing of their – Their own opinion. In other words, I take it. Yes, if – I was just addressing the reason for the delay, basically, de novo, because that's the way the district court did it. But the state of Montana is still entitled to deference. And I recognize that in State v. Oregway, which came out after the state Supreme Court decided this case in Doyle, the state of Montana did criticize its prior analysis. The state court's criticism of its analysis in Doyle, however, does not mean that the analysis in Doyle is not entitled to deference under AEDPA. It does not mean that whatever was said in Oregway does not establish that the state court's decision was contrary to or an unreasonable application of federal law. It's an odd situation. It's an odd situation, yes. Like, oops, the state Supreme Court said. Yes. It's not entirely uncommon for us to have opinions that go back and forth in our court. Is there a comment on Montana's jurisprudence? No, no, no. They do a very fine job. They do a very fine job. But on occasion, they do change their mind. But despite the language that was used in Oregway to criticize its prior analysis, Montana has consistently, including in Doyle, they have consistently applied the four Barker factors. The goal in all of these cases has been to look at the United States Supreme Court test, which is the Barker factors, and to apply those factors. There's no doubt, though, that Bruce really elevated the prejudice prong a lot higher than appears to be the case under Montana law today. That is true. Yes, Your Honor, there was a significant emphasis on prejudice that occurred under Doyle. However, the court in Doyle examined all four of the factors. They said, though, that the first and third factors were not at issue in this case, and therefore the discussion was on the second and fourth. And in this case, they concluded that it wasn't necessary to determine who was responsible for the delay because regardless of that, Doyle was not prejudiced by the delay. And given that the state was diligent in bringing this case to trial, that the delay was not excessive, given all those factors, it certainly was not incorrect to conclude that without prejudice, Doyle's right to a speedy trial was not violated. If the Court has no further questions, I will conclude. Thank you. The State of Montana urges this Court to affirm the District Court's order denying Doyle's petition for writ of habeas corpus. Thank you. Thank you. Mr. Ness, you have some time. Fairly briefly, I think if I can analogize a little bit to the Speedy Trial Act with the way that the District Court treated, in particular, those first two periods of delay, the Speedy Trial Act gives 70 days for a trial to occur. If you need a continuance, then for various reasons, the Court can continue a case. One of them that may be analogous here is if it's in the interest of justice. That's the loophole that swallows the act if you go back historically. I think a lot of people would agree with you, Judge, on that. Nevertheless, my point is that if the Court makes that finding, it's not a finding saying, well, 70 days would have been needed anyway, which is, in essence, what the District Court did here with that first 224 days. It said, well, even though the crime lab hadn't gotten around to really doing any analysis or very little analysis of the evidence here, I'm just going to decide from the outset that the 224 days would have been necessary in any event, so I'm just going to exclude that completely, and I'm not going to assign a reason for this delay, with the exception of saying, I'm just going to throw it into a neutral bend here and apply it to both. It, in essence, gave the State 224 days, if you will, to waste time or wait around, and not do anything until that second continuous motion came out. Did I read the record correctly? Is the Montana State Speedy Trial Act 225 days? I'm not real conversant with state law. The Montana Supreme Court, I believe, had a rule that was, I think, overruled in Araguay, where they applied a 200-day rule or something like that. I mean, it was significantly longer than our federal 70 days. Right. But I don't know if Montana has an analog to the exception or tolling provision that Judge Guy was referring to. And I'll be honest with you. I don't either. I haven't worked in state court for a long time. But other than that, unless the Court has any further questions. We appreciate the argument. Thank you. Thank you. Doyle v. Law is submitted.
judges: Guy, McKeown, Tallman